UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALZATA ELAINE HENDERSON,<br>    Plaintiff,<br>  v.<br>CAROLYN W. COLVIN,<br>    Defendant. | Case No. 14-cv-02779-KAW<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br>Re: Dkt. No. 21 |

Plaintiff Alzata Elaine Henderson seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for an award of benefits, or, in the alternative, for further proceedings. Pending before the Court is Plaintiff's motion for summary judgment. Having considered the papers filed by the parties, and for the reasons set forth below, the Court GRANTS Plaintiff's motion for summary judgment, and REMANDS the case for further proceedings consistent with this order.

## I. BACKGROUND

On January 4, 2011, Plaintiff filed a Title XVI application for Supplemental Security Income ("SSI") Benefits. Administrative Record ("AR") 185-90. Plaintiff alleges a disability onset date of November 11, 2007. AR 185. Plaintiff's claim was initially denied on June 17, 2011. AR 111-15. Plaintiff filed a Request for Reconsideration on August 8, 2011. AR 116. Plaintiff's Request for Reconsideration was denied on January 6, 2012, and Plaintiff filed a Request for Hearing on March 1, 2012. AR 119-23, 124-26. A hearing was held before Administrative Law Judge Katherine Loo on December 6, 2012. AR 13-28.

Plaintiff is forty-one years old. AR 22. She has five children, three of whom reside with her, and is not currently married. AR 49, 185. Plaintiff's parents struggled with drug addiction

during her childhood, and Plaintiff lived with her aunt until her death, which happened during her seventh grade year. AR 355, 673.  After her aunt's death, Plaintiff dropped out of school and lived on her own from the age of 12, and experienced periods of homelessness. *Id.*  While Plaintiff never attended eighth grade, she briefly attended Vacaville High School, but did not receive a high school diploma or a GED. AR 58.  From 1999 to 2002, Plaintiff worked part-time as a child care provider, but reports being fired for missing too much work due to health issues. AR 355.  In late 2010, Plaintiff again worked, providing child care in her own home, but had to stop because of her anxiety and depression. AR 51, 229, 355.  Plaintiff has held short-term jobs as a janitor, a receptionist, and an in-home care provider. AR 22, 52, 230, 253-57.  She has no past relevant work, and she is not insured to receive Title II benefits. AR 22.

In August 2008, Plaintiff began receiving psychiatric treatment at Schuman-Liles Clinic. Psychiatrist Uma Lerner, M.D., saw her on three occasions between August 2008 and March 30, 2009, and observed symptoms of depression, irritability, anxiety around people, difficulty sleeping, nightmares, anger outbursts, and headaches. AR 307-13, 323-26.  Dr. Lerner diagnosed Plaintiff with Depressive Disorder NOS, and prescribed Zoloft, Trazodone, and Depakote to treat her symptoms. *Id.*  From June 29, 2009 to May 4, 2011, Plaintiff was treated at Schuman-Liles by Steven Balt, M.D., who changed her diagnosis to Major Depressive Disorder, assigned GAF scores of 51-60, indicating moderate symptoms and/or impairments in functioning, and prescribed Sertraline, Lorazepam, and Trazodone. AR 319-22, 543-48.

On December 21, 2009, Plaintiff presented at John George Psychiatric Pavilion and was placed on an involuntary psychiatric hold. AR 302. She was diagnosed with Depressive Disorder NOS, and, at intake, was assigned a GAF score of 30. *Id.*  Plaintiff was discharged one day later with an assigned GAF score of 65. AR 304.

In August 2011, Armeen William Weber, M.D., became Plaintiff's treating psychiatrist at Schuman-Liles, and continues to be her primary mental health provider. AR 539.  Over the course of seven visits, Dr. Weber observed Plaintiff's symptoms of depression, irritability, impulsivity, racing thoughts, flight of ideas, anxiety, insomnia, mood swings, crying spells, flashbacks, nightmares, isolative behavior, and fear of leaving the house. AR 534-542, 668-77, 684-98.  Dr.

Weber initially diagnosed Plaintiff with Bipolar Disorder, mixed, Major Depressive Disorder, unspecified, and assigned two GAF scores of 60-51, indicating moderate symptoms and/or impairments in functioning, and prescribed Sertraline, Depakote, Lorazepam, and Trazodone. AR 541, 536-37.

Thereafter, Plaintiff became pregnant and stopped taking her medication. *See* AR 675. Plaintiff gave birth on September 20, 2012, and returned to treatment with Dr. Weber. AR 675, 679. On October 16, 2012, Dr. Weber diagnosed Plaintiff with Bipolar Disorder, mixed, Major Depressive Disorder, recurrent, and Post-traumatic Stress Disorder ("PTSD"), and assigned a GAF score 41-50, indicating serious symptoms and/or impairments in functioning. AR 676. Dr. Weber prescribed Sertraline, Depakote, Lorazepam, and Trazodone. *Id.* On November 13, 2012, Plaintiff was assigned a GAF score of 41-50, and was prescribed Lithium, Lorazepam, Setraline, and Trazodone. AR 670-71. Plaintiff saw Dr. Weber on January 4, March 7, and March 20, 2013, and was assigned GAF scores between 41 and 50 during each of those office visits. AR 682, 692, 697. On March 20, 2013, Dr. Weber opined that Plaintiff likely did not have PTSD, and removed that diagnosis, and, instead, attributed what he had previously classified as "flashbacks" as being memories related to Plaintiff's depression. AR 686.

In addition to her mental impairments, Plaintiff is morbidly obese and experiences chronic pain as a result of her obesity and mild osteoarthritis. AR 328, 338, 343, 344, 348-50, 550, 551, 557, 562, 564, 565, 576. Plaintiff has suffered from gastritis, pancreatitis, and gallstones since as early as 1999. AR 328, 338, 344, 384, 387, 407-14, 423-27, 428-31, 435-50, 451-60, 472. In September 2011, she was hospitalized with complications from cholelithiasis and choledocholithiasis (gallstones) at San Leandro Hospital and then at Eden Medical Center for cholecystitis (inflammation of the gallbladder), where she underwent a laparoscopic cholecystectomy (removal of the gallbladder). AR 435-533. She has received general primary care and treatment for these conditions at East Oakland Health Center, LifeLong Medical Care, Howard Daniel Clinic, and Native American Health Center. *See generally* AR 327-41, 342-46, 549-77, 578-667.

On March 28, 2011, Ahmed El Sokkary, Psy.D., performed a psychological evaluation of

Plaintiff. AR 355-57. Plaintiff reported symptoms of depression and anxiety and explained that she spends the majority of her time at home. AR 355. On examination, Plaintiff was polite and cooperative, but appeared internally preoccupied, with downcast eyes, slightly delayed speech, and a depressed mood and affect. AR 356. Dr. El Sokkary administered the WAIS-IV and WMS-IV and found that Plaintiff's intellectual functioning was in the extremely low to borderline range. AR 356. Dr. El Sokkary diagnosed Plaintiff with Mood Disorder, not otherwise specified ("NOS"), and Borderline Intellectual Functioning. AR 357. Dr. El Sokkary opined that Plaintiff "demonstrated a limited capacity to understand, remember, and perform simple tasks," "struggled to maintain a sufficient level of concentration, persistence, and pace, indicat[ing] that she would have difficulty in a competitive work setting," and "would have some difficulty keeping a regular workday/workweek schedule without interruptions from [her] psychiatric condition." *Id.*

On March 28, 2011, Rose Lewis, M.D., performed a physical consultative exam. AR 348-52. At the exam, Plaintiff reported pain in her right shoulder, both hands, left knee, both ankles, and back. AR 348. Plaintiff reported that, aside from some light cooking and cleaning, she does not do much else at home and rarely goes out. *Id.* Dr. Lewis observed that Plaintiff was morbidly obese; had less than the full range of motion in her hips, knees, ankles, shoulders, elbows, and wrists; was unable to kneel or squat; and exhibited mild tenderness to palpation on the right iliac crest and marked muscle spasm to the right trapezius muscle. AR 349-50. Dr. Lewis diagnosed Plaintiff with morbid obesity and mild osteoarthritis and opined that she can sit without limitation; can walk one block at a time, stand for 10 minutes at a time, and stand or walk for four hours cumulatively; lift up to 50 pounds occasionally and 25 pounds frequently; frequently climb, balance, stoop, kneel, crouch, and crawl; and frequently reach, handle, finger, and feel. AR 350-51.

In a decision dated December 21, 2012, the ALJ found that Plaintiff was not disabled. AR 13-28. On February 25, 2013, Plaintiff requested that the Appeals Council review the ALJ's decision. AR 11-12. Plaintiff was permitted to submit additional medical records, including the records of Plaintiff's treatment with Dr. Weber, dated January 4, 2013, March 7, 2013, and March 20, 2013. AR 4. The ALJ's decision became the final decision of the Commissioner when the

Appeals Council denied review on April 18, 2014. AR 1-6. Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

On January 28, 2015, Plaintiff filed her motion for summary judgment. (Pl.'s Mot., Dkt. No. 21.). On February 25, 2015, Defendant filed its opposition. (Def.'s Opp'n, Dkt. No. 23.) On March 11, 2015, Plaintiff filed a reply. (Pl.'s Reply, Dkt. No. 23.)

## II.  LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under Social Security Administration ("SSA") regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721. If the answer is no, the claimant is not disabled. *Id.* If the answer is yes, the Commissioner proceeds to step three, and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the

fourth step in the sequential evaluation process is to determine the claimant's residual functional capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, she is not disabled. 20 C.F.R. § 404.1520(f). RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the burden of proof in steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001). The burden shifts to the Commissioner in step five. *Id.* at 954.

### III.   THE ALJ'S DECISION

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since January 4, 2011, the application date. AR 18. At step two, the ALJ found that Plaintiff had the following severe impairments: morbid obesity, borderline intellectual functioning, depression, high blood pressure, diabetes, anemia, substance dependence, and cholecystitis. AR 18. At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. § 404, Subpart P, Appendix 1. AR 19. Before considering step four, the ALJ determined that Plaintiff has residual functional capacity to

> perform light work as defined in 20 C.F.R. § 416.967(b) except that she can sit for eight hours in an eight-hour workday; she can stand or walk for four hours in an eight-hour workday, up to 10 minutes at a time without limitation; she can lift, carry, push or pull up to 10 pounds frequently and up to 25 pounds occasionally; she can frequently use her upper extremities to reach in all directions, handle, finger, push, and pull; she cannot climb ladders, ropes, or scaffolds; she can rarely climb ramps and stairs (rarely defined as less than an hour over an eight-hour day); she can occasionally balance, stoop, kneel, or crouch; she cannot crawl or work at unprotected heights; she cannot work with or in close proximity to dangerous moving mechanical parts; she cannot operate a motor vehicle; she cannot work in extreme temperatures; she can only maintain sufficient concentration and pace at two-hour intervals in the performance of simple, routine, nonproduction, non-rate work activity; she requires supervisory assistance with simple work activity decisions; supervision must be supportive,

nonconfrontational and nonintensive; changes in a work routine or setting must be gradually introduced; interaction with coworkers should initially be occasional and nonintensive and gradually progress to the point that such interaction can be frequent, but nonintensive; no interaction with the public; she may miss up to two workdays per month.

AR 19-20. At step four, the ALJ concluded that Plaintiff did not have any past relevant work. AR 22. Lastly, at step five, the ALJ concluded that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform and so she was not disabled for the purpose of the Social Security Act. AR 23-24.

## IV. DISCUSSION

In her motion for summary judgment, Plaintiff argues that the ALJ erred in denying her application for social security benefits and that the case should be remanded for payment of benefits or, alternatively, for further proceedings for six reasons: (1) the ALJ erred at Step Two by failing to include Bipolar Disorder and Post-Traumatic Stress Disorder ("PTSD") among Plaintiff's severe impairments, resulting in an RFC that fails to include all of Plaintiff's limitations; (2) the ALJ erred by rejecting the opinions of Plaintiff's treating and examining sources without discussion or by providing insufficient reasons that are not supported by substantial evidence in the record; (3) ALJ erred by failing to provide specific, clear, or convincing reasons for rejecting Plaintiff's testimony; (4) the ALJ erred in determining Plaintiff's residual functional capacity ("RFC"); (5) the ALJ erred at Step Five by relying on vocational testimony that is based on an improper hypothetical; and (6) the ALJ erred at Step Five by relying on vocational testimony that conflicts with the DOT and is unsupported by persuasive evidence that explains the deviation. (Pl.'s Mot. at 6-7.)

### A. The ALJ erred by failing to include Bipolar Disorder and Post-Traumatic Stress Disorder among Plaintiff's severe impairments.

Plaintiff contends that the ALJ erred by failing to include bipolar disorder and PTSD as severe impairments. (Pl.'s Mot. at 7.) In fact, the ALJ completely ignored these two diagnoses, as she failed to mention them in her decision, despite citing to Exhibit 16F as evidence of the impairments that were identified. *See* AR 18. Defendant concedes that the ALJ did not address Dr. Weber's medical opinion, but that any error is harmless, because the ALJ "adequately discusse[d]

7

the impairment[s] at step four." (Def.'s Opp'n at 7 n. 1.) To the contrary, ignoring medical evidence of other impairments without providing any reason for doing so is legal error. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996) (citing *Cotton v. Bowen*, 799 F.2d 1403, 1408-09 (9th Cir. 1986)(legal error where ALJ's findings completely ignore medical evidence without giving specific, legitimate reasons for doing so)). Here, Plaintiff's Representative Brief, dated November 30, 2012, addressed both diagnoses in detail, cited to the record, and discussed why they qualified as severe impairments. AR 284-92. Accordingly, the ALJ's failure to address these two impairments requires that the case be remanded, and the Commissioner must give proper consideration to Dr. Weber's evidence.[1] *Cotton*, 799 F.2d at 1408-09.

### B. The ALJ erred by rejecting the opinions of Plaintiff's treating and examining sources without clear and convincing or specific and legitimate reasons.

The opinions of treating medical sources may be rejected only for clear and convincing reasons if not contradicted by another doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Where the record contains conflicting medical evidence, the ALJ must make a credibility determination and resolve the conflict. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (quoting *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence...." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citations omitted).

Psychologists and psychiatrists, in diagnosing mental illness, often make five different sub-diagnoses, on what they call "Axes." *Williamson v. Astrue*, No. EDCV 12–00364–CW, 2013 WL 141544, at *4 n. 4 (C.D. Cal. Jan. 10, 2013). Axis V measures the Global Assessment of

---

[1] The ALJ's omission of the PTSD diagnosis may be harmless error in light of Dr. Weber's revised opinion, dated March 20, 2013, that Plaintiff did not have PTSD. *See* AR 686. Rather, what he initially perceived as flashbacks connected with PTSD, were actually memories that were symptomatic of her existing depression diagnosis. *Id.*

8

Functioning ("GAF"). *Id.* The GAF is a scale ranging from zero to 100, used to rate social, occupational and psychological functioning on a hypothetical continuum of mental health. *Id.* The GAF score is a subjective determination that represents the clinician's judgment of the individual's overall level of functioning. *Sigmon v. Kernan*, No. CV 06–5807 AHM (JWJ), 2009 WL 1514700, at *9 n.3 (C.D. Cal. May 27, 2009). A GAF score may help an ALJ assess mental residual functional capacity, but is not raw medical data. People with a GAF score of 41 to 50 have "serious symptoms" or any serious impairment in social, occupational or school functioning. *Williamson v. Astrue*, No. EDCV 12–00364–CW, 2013 WL 141544, at *4 n.5 (C.D. Cal. Jan. 10, 2013). By contrast, a GAF score of 51 to 60 indicates only "moderate difficulty in functioning." *Atkinson v. Astrue*, No. 2:10–cv–02072–KJN, 2011 WL 4085414, at *10 (E.D. Cal. Sept. 13, 2011). People in that category may have flat affects, circumstantial speech, occasional panic attacks, few friends, or conflicts with coworkers. *Id.* A GAF score of 61 to 70 indicates some mild symptoms or some difficulty in social, occupational or school functioning but generally functioning well with some meaningful interpersonal relationships. *Sigmon v. Kernan*, No. CV 06–5807 AHM (JWJ), 2009 WL 1514700, at *9 n.3 (C.D. Cal. May 27, 2009).

### i. Treating medical sources

Plaintiff argues that the ALJ erred in weighing the evidence of Plaintiff's treating medical sources. (Pl.'s Mot. at 9.) Specifically, the ALJ ignored the medical opinions of her treating psychiatrist, Dr. Weber, without mention or discussion, and instead cited to medical evidence from treating sources from several years prior, which resulted in an RFC that is not supported by substantial evidence. (Pl.'s Mot. at 10-11.) Defendant concedes that the ALJ did not address Dr. Weber's medical opinion, but asserts that any error is harmless. (Def.'s Opp'n at 7 n. 1.) The Court disagrees.

In evaluating medical evidence from different physicians, the Ninth Circuit distinguishes between the opinions of three types of physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The three categories are as follows: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Id.* at 830. Generally, more

weight should be given to the opinion of the treating physician than to the opinion of doctors who do not treat the claimant. *Id.* The opinions of treating medical sources may be rejected only for clear and convincing reasons if not contradicted by another doctor and, if contradicted, only for specific, legitimate reasons supported by substantial evidence. *Id.* Where the ALJ fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, that opinion is accepted as true. *Id.* at 834.

In not addressing the medical opinion of Plaintiff's treating psychiatrist Dr. Weber, the ALJ failed to articulate why she was apparently rejecting his medical opinion, including the bipolar disorder and PTSD diagnoses. *See* AR 20-22. Instead, the ALJ only addressed medical evidence from long before Plaintiff's application date. AR 22. Specifically, the ALJ cites to the August 25, 2008, opinion of Dr. Uma Lerner, that Plaintiff exhibited a GAF score of 65[2] and was expected to maintain stability and experience a decrease in symptoms within three months with medication compliance and treatment. AR 22, 312, 317. Contrary to Dr. Lerner's expectation that Plaintiff's condition would improve, subsequent medical evidence demonstrates that Plaintiff's mental impairments did not improve and actually deteriorated. *See* AR 534-542, 668-77, 684-98. Indeed, Dr. Weber diagnosed Plaintiff with bipolar disorder and PTSD and assigned GAF scores of 41-50 after the birth of her child in 2012,[3] and noted that Plaintiff's response to medication was "fair" despite her compliance. *See* AR 19, 22; *cf.* AR 674-75, 686, 692.

Generally, the ALJ's failure to provide adequate reasons for rejecting the medical opinions requires that they be accepted as true. *Lester*, 81 F.3d at 834 (citing *Hammock v. Bowen,* 879 F.2d 498, 502 (9th Cir. 1989)); *Pierce v. Astrue*, 382 F. App'x 618, 619-20 (9th Cir. 2010)(reversed district court order affirming ALJ's decision that provided no explanation for why he rejected an examining physician's findings).[4] A claimant's treating physicians are entitled to special

---

[2] The Court notes that the December 22, 2009 GAF score of 65 was assigned when Plaintiff was being discharged from the John George Psychiatric Pavilion after being admitted and held on an involuntary psychiatric hold the day before when she was assigned a GAF score of 30. AR 302, 304.
[3] While not part of the administrative record available to the ALJ, Plaintiff was assigned GAF scores of 41-50 on three occasions in 2013. AR 682, 686, 692. These records were submitted to, and considered by, the Appeals Council, which denied Plaintiff's appeal.
[4] That there is evidence in the record that could justify a rejection of those medical opinions is

10

consideration. *Delegans v. Colvin*, 584 F. App'x 328, 331 (9th Cir. 2014) (citing *Orn v. Astrue*, 495 F.3d 625, 631-33 (9th Cir. 2007). Here, the ALJ did not even mention Dr. Weber in her decision, let alone provide a medical reason for rejecting his medical opinions.

Furthermore, Dr. Weber's records and opinions are generally consistent with the other medical opinions and provide substantial evidence that Plaintiff's diagnoses include bipolar disorder, depression, and PTSD,[5] and experiences limitations at step three. The ALJ's failure to present any reliable, conflicting medical evidence or specific and legitimate reasons for rejecting his opinion requires the reversal of the ALJ's finding at step three, and remand for further proceedings consistent with this order. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1107 (9th Cir. 2014). On remand, Dr. Weber's diagnoses of bipolar disorder and depression shall be treated as true.

### ii. Examining medical sources

Plaintiff argues that the ALJ implicitly rejected the medical opinion of Dr. El Sokkary, her examining medical source, without adequate explanation. (Pl.'s Mot. at 11.) On March 28, 2011, Dr. El Sokkary performed a consultative examination, and diagnosed Plaintiff with Mood disorder NOS, Borderline Intellectual Functioning, but did not assign her a GAF score. AR 355-57. During the examination, Plaintiff reported that her medication is helping, but that she felt depressed and did not sleep well. AR 355-66. Dr. El Sokkary opined that Plaintiff "demonstrated a limited capacity to understand, remember, and perform simple tasks" and "struggled to maintain a sufficient level of concentration, persistence, and pace." AR 357. Notwithstanding, Plaintiff was cooperative during the evaluation, and could "appropriately interact with supervisors and co-workers at this time." *Id.* Dr. Sokkary further opined that Plaintiff would have difficulty keeping a regular workday/workweek schedule without interruption from her psychiatric condition. *Id.*

Plaintiff's argues that while the ALJ purportedly gave great weight to Dr. El Sokkary's

---

immaterial. *See Harman v. Apfel*, 211 F.3d 1172, 1178-79 (9th Cir. 2000) (physician's opinion to be accepted as true even if there was evidence that could have been used to reject it).
[5] The Court notes that Dr. Weber may have since revised his medical opinion and removed PTSD as a diagnosis. *See* AR 686. The Court is confident that this will be addressed on remand with the assistance of more recent medical records.

findings and incorporated them into her RFC assessment, a comparison of Dr. El Sokkary's opinion and the ALJ's RFC reveals that they are inconsistent. (Pl.'s Mot. at 11.) For example, Plaintiff's results on the WMS-IV and WAIS-IV were borderline to extremely low, leading Dr. El Sokkary to find that Plaintiff exhibited work-related limitations that are significantly more restrictive than those captured in the ALJ's RFC, and suggest that Plaintiff is incapable of competitive, unskilled work. AR 347. Specifically, the finding that Plaintiff demonstrated a limited capacity to understand, remember, and perform even simple tasks and struggled to maintain a level of concentration, persistence, and pace contradicts the ALJ's finding that she is capable of maintaining sufficient concentration and pace for two-hour intervals to perform "simple, routine, nonproduction, non-rate work activity." AR 20, AR 357. It is not clear, however, that the ALJ implicitly rejected Dr. El Sokkary's opinion that Plaintiff would have difficulty keeping a regular work schedule without interruption from her psychiatric condition, because the RFC allows for missing two days of work per month.

The ALJ did not provide an adequate explanation for the inconsistency with her findings with Dr. El Sokkary's opinion regarding Plaintiff's limitations. Therefore, the Court will accept Dr. El Sokkary's opinion as true in regards to Plaintiff's limitations, as set forth in the preceding paragraph, and remands the case for further proceedings consistent with this order.

**C.  The ALJ erred by failing to identify which portions of plaintiff's testimony were not credible and failing to provide clear and convincing reasons for rejecting Plaintiff's testimony.**

Here, Plaintiff argues that the ALJ erred in evaluating Plaintiff's credibility by making a general credibility determination without identifying which symptoms were not credible and by failing to provide reasons for rejecting the testimony. (Pl.'s Mot. at 13.) Defendant contends the ALJ's finding that Plaintiff's alleged limitations were not credible to the extent that they were inconsistent with the RFC is sufficient. (Def.'s Mot. at 9.) Not so.

In evaluating a claimant's testimony regarding subjective pain or other symptoms, an ALJ must engage in a two-step inquiry. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citation omitted). An ALJ must first "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or

12

other symptoms." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotations and citations omitted). At this step, a claimant need not show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (internal quotation and citations omitted). Next, if a claimant meets this first prong and there is no evidence of malingering, the ALJ must then provide "specific, clear, and convincing reasons" for rejecting a claimant's testimony about the severity of her symptoms. *Id.*

In assessing a claimant's credibility, the ALJ must consider, in addition to the objective medical evidence, the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures, other than treatment, the claimant uses or has used to relieve pain or other symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p, 1996 SSR LEXIS 4 (July 2, 1996).

As to the first prong, the ALJ found that Plaintiff's underlying impairments could reasonably be expected to cause the alleged symptoms. AR 21. As to the second prong, the ALJ rejected Plaintiff's testimony about the severity of her symptoms, finding that they were not credible to the extent that they were inconsistent with the RFC assessment. *Id.*

There is no dispute that the ALJ provided a thorough summary of Plaintiff's testimony, including her activities of daily living, her ability to work, and her symptoms. AR 20-21. Despite Defendant's contention to the contrary, the ALJ did not clearly articulate which testimony she found to be not credible or the reasons why it was not credible. AR 21. In fact, the decision is devoid of analysis or explanation other than that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." AR 21. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

13

undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)(quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), as amended (Apr. 9, 1996)). Thus, the ALJ's sweeping conclusion that Plaintiff's testimony is not credible to the extent that it conflicts with the RFC is not a "specific, clear, and convincing reason" for rejecting the testimony about the severity of her symptoms.

In light of the foregoing, the ALJ improperly discredited Plaintiff's testimony, because she failed to identify any evidence to undermine the claimant's subjective complaints.

### D.     The ALJ erred in determining Plaintiff's Residual Functional Capacity.

Plaintiff contends that the ALJ's RFC determination was not supported by substantial evidence, because she failed to consider all of Plaintiff's limitations due to the omission of bipolar disorder and PTSD as severe impairments at Step Two, the rejection of the consistent opinions of treating psychiatrist Dr. Weber and psychological consultative examiner Dr. El Sokkary, and by improperly discrediting Plaintiff's testimony. (Pl.'s Mot. at 18-19.)  In opposition, Defendant argues the ALJ properly credited the functional limitations that were supported by evidence which resulted in a proper RFC determination.  (Def.'s Opp'n at 4.)

A claimant's RFC is what the claimant is capable of doing despite his or her mental and physical limitations.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001).  An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p.  The ALJ must consider all relevant evidence in formulating an RFC, and "an RFC that fails to take into account a claimant's limitations is defective."  *Valentine*, 574 F.3d at 690.  The ALJ's findings may be set aside if not supported by substantial evidence.  *McCartey v. Massanari*, 298 F.3d 1072, 1075 (9th Cir. 2002); *Smolen*, 80 F.3d at 1279.  An ALJ may omit limitations arising out of a claimant's subjective complaints only if the subjective complaints have been properly discredited. *See Lingenfelter*, 504 F.3d at 1040-41 (RFC excluding subjective limitations was not supported by substantial evidence where the ALJ did not provide clear and convincing reasons for discrediting claimant's testimony).

Here, the ALJ concluded that Plaintiff has the functional capacity to perform light work with several physical limitations, but with the following non-exertional limitations:

> she can only maintain sufficient concentration and pace at two-hour intervals in the performance of simple, routine, nonproduction, non-rate work activity; she requires supervisory assistance with simple work activity decisions; supervision must be supportive, nonconfrontational and nonintensive; changes in a work routine or setting must be gradually introduced; interaction with coworkers should initially be occasional and nonintensive and gradually progress to the point that such interaction can be frequent, but nonintensive; no interaction with the public; she may miss up to two workdays per month.

AR 19-20. The ALJ's improper weighing of the medical evidence affects her RFC determination, because she omitted several limitations, including those identified by Dr. El Sokkary and the diagnoses identified by Dr. Weber. For instance, the ALJ does not appear to have adequately considered Plaintiff's difficulty keeping a regular workday/workweek schedule without interruptions from psychologically based symptoms, and her limited capacity to understand, remember, and perform simple tasks. AR 357. Furthermore, the ALJ did not consider any limitations associated with Plaintiff's bipolar disorder diagnosis.

As a result, the ALJ's RFC determination was flawed, because it failed to include all of Plaintiff's limitations. On remand, the RFC shall include those limitations identified by Plaintiff's treating psychiatrist Dr. Weber and consultative examiner Dr. El Sokkary.

### E. The ALJ relied on vocational expert testimony based on an incomplete hypothetical to find Plaintiff not disabled.

Plaintiff argues that the ALJ erred by relying on vocational expert ("VE") testimony based on a hypothetical that did not include all of Plaintiff's limitations to find that Plaintiff was not disabled. (Pl.'s Mot. at 19.) Defendant contends that the ALJ properly relied on the VE's testimony, but does not address the argument that the hypothetical was incomplete other than to state that the RFC was accurate. (*See* Def.'s Opp'n at 6-7.)

After finding that Plaintiff had no past relevant work at Step Four of the sequential disability analysis, the burden shifted to the ALJ to demonstrate that Plaintiff is not disabled and can engage in work that exists in significant numbers in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012). The ALJ may meet this burden at step five by "asking a

15

vocational expert a hypothetical question based on medical assumptions supported by substantial evidence in the record and reflecting all of the claimant's limitations, both physical and mental, supported by the record." *Id.*

If the ALJ's hypothetical question fails to include all of the impairments from which the claimant suffers, then the VE's testimony cannot constitute substantial evidence upon which to base a conclusion that the claimant is not entitled to benefits. *Id.* at 1162.  As set forth above, at the hearing, the ALJ's hypothetical omitted the limitations identified by Plaintiff's treating and examining sources, including Plaintiff's bipolar disorder and her limited capacity to understand, remember, and perform even simple tasks and difficulty in maintaining a level of concentration, persistence, and pace. *See* discussion *supra* Part IV.B. Indeed, the hypothetical provided that Plaintiff could sustain her attention for two hours, which is contradicted by the medical evidence. AR 73-74, 357.  Furthermore, the ALJ ignored Dr. El Sokkary's opinion that Plaintiff would have difficulty maintaining a regular work schedule, despite the VE's testimony that the hypothetical individual would be unable to maintain employment if they had three or more unplanned absences per month. AR 76, 357.

Accordingly, the RFC used in the hypotheticals, which were relied upon by the ALJ, did not include all of Plaintiff's limitations.  Given that the medical evidence supports these limitations, the VE's testimony does not support the ALJ's non-disability finding.

### F. ALJ reliance on vocational expert testimony purportedly inconsistent with the Dictionary of Occupational Titles

Since the case is being remanded for further proceedings, the undersigned will not address Plaintiff's contention that the VE testimony was inconsistent with the DOT, because further testimony will be required to address those specific limitations not included in the RFC.

///
///
///
///
///

## V. CONCLUSION

For the reasons explained above, Plaintiff's motion for summary judgment is GRANTED, and this action is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings, including a new administrative hearing and a new consultative psychiatric evaluation, consistent with this order.

The Clerk of the Court shall close this case.

IT IS SO ORDERED.

Dated: March 22, 2016

KANDIS A. WESTMORE
United States Magistrate Judge